We have three argumentations this morning, two of which have been consolidated for purposes of oral argument. And the first two are numbers 13-1442 and 13-1501, Panduit Corporation versus ADC. Mr. Coyer. May it please the Court. Before I get started this morning, I'd like to point out that to the extent I refer to the appendix, I'll be referring to the appendix of the 1501 appeal. I'd like to address three main issues this morning. The Board's construction of the term Cable Exit Trough, the Board's treatment of the Long Reference, and the Board's treatment of the Zatenia Reference. A fundamental error in the Board's decision in all of these appeals is the Board's failure to afford appropriate breadth to the claim term Cable Exit Trough. Nothing in the specification of ADC's patents limits the scope of the term, so a broad interpretation must apply under the Broad Accrucible Interpretation Standard. The Board's construction was not broad enough because it excludes subject matter included in more relevant technical definitions. The McGraw-Hill Dictionary of Scientific and Technical Terms defines a cable trough in the art of cable routing as an enclosed structure. So the Board's construction that a trough must be open is just too narrow to exclude that more relevant definition. But the Board relied on other definitions, right? I just wonder on what basis you found a definition that includes enclosed, and what else is there? I know you pointed to stuff in the specification that talks about pathway, but there's an argument about why that shouldn't control. So on what basis are we supposed to say you're right and they're wrong? Well, what the Board did was before this claim term was even at issue, prior to the decision on our appeal, neither party had disputed whether or not the references disclosed the Cable Exit Trough. In the decision on appeal, the Board found a definition related to animal feed troughs and then construed the term Cable Exit Trough to require open structures, long, narrow, open, receptacle, gutter, or channel. Our view is that's just too narrow because Cable Exit Troughs, in the art of routing cables, can be enclosed. You didn't submit this alternative definition during the prosecution, did you? We did not. Why should we consider something now that the PTO didn't have a chance to consider? Well, as I said, the construction of this term wasn't an issue before the Board's decision on appeal, so there was no reason for us to present this definition before they issued their decision on appeal. How did the examiner construct it? He found that the references disclosed the Cable Exit Trough. He didn't perform an actual construction, but he did not find that the art did not disclose the Cable Exit Trough. The examiner's adoption of certain rejections or failure to adopt certain rejections were not based on that claim term. So what you're saying is that basically he accepted the broad definition that you're urging? Implicitly, it just was not an issue. When he addressed it, the fact that a Cable Exit Trough was present or not was just not part of the prosecution during re-examination. The definition you're proposing defines it as enclosed, right? Yes. But you're not suggesting that it would be only enclosed. So you're not even adopting the definition that you're putting forward, right? Because you're saying it can be enclosed, but it doesn't have to be enclosed. So that's not even the definition that you're advancing, right? That's correct. We're presenting the definition as evidence that the Board's construction was too narrow because it excluded a realm of subject matter that should be included in Cable Trough. It can be open or closed as far as we're concerned. But to find that just one or the other is too narrow under the Broadest Reasonable Interpretation and due to the fact that the specification says nothing about whether it's got to be open or closed. Was this issue, this claim construction at issue in the earlier appeals to this Court? Yes. And what is the impact of our Rule 36 affirmance? There is no impact to that Rule 36 affirmance because according to this Court's decision last October, a Rule 36 affirmance can only be controlling if there's only one issue that was decisive and that claim construction issue was not decisive of the last appeal. In fact, there were nine issues related to Long and whether or not Long disclosed various features of the claims, including that claim construction, but also ADC's allegation that Long lacks a cable-isolated pathway, that Long lacks being releasably mountable, that Long lacks without modification, that Long lacks a curved sidewall surface, and three other grounds. So it's just not clear that that was the sole issue that was determinative and because it's not clear, a Rule 36 order can't be controlling. So a properly broad construction is structured, capable of routing cables out of the lateral trough section by providing a pathway for the cables to exit the lateral trough section. That's all that the patents say about what the cable exit trough is, that it provides a pathway for the cables to exit the trough section. So because the Board's construction is legally erroneous, it's finding that Long and Zatenia lack the cable exit trough that's also legally erroneous. But even if you take the Board's construction, let's say the Board's construction is proper, Long does disclose a cable trough. In its decision on appeal, the Board found that Long failed to disclose the cable exit trough because the funnel-shaped part of Long is completely enclosed. But the Board itself also recognized that the funnel-shaped part would be understood to be a tube or a shaft. Tubes and shafts are open at their ends, so it's not completely enclosed. You can see in Figure 2 of Long, which is on page 814 of the appendix, that cables are laying in the trough and they enter the bottom of the funnel-shaped part and exit the top as they curve onto the rounded guiding element. So because the funnel-shaped part of Long is not completely enclosed, the basis for the Board's finding that it's not a cable exit trough is erroneous. Furthermore, the rounded guiding element 6 in Long, which is also part of the exit structure, is completely open. Turning to Zitania, Zitania also discloses a cable exit trough as construed by the Board. Figure 8 of Zitania, on page 819 of the appendix, shows that the strain reliever 54 of Zitania, including the slots 57, the grommets 58, and the curved surface below the slots, all cooperate to hold the cable 3 as it exits the channel. It holds the cable. It's a receptacle. It's an open receptacle. So what exactly are you saying is the cable exit trough? Is it just 57 or is it some combination of 54, 57, and 58? Well, 57 is actually part of 54. So 54 is, the whole structure there is the strain reliever. And so all of those parts cooperate to release. You mean 54 covers the slots from the trough? And so that whole structure is cooperating to relieve the strain in cables as they exit the channel. So you're saying that whole structure is the exit trough, or are you saying that 57, which is the slot? That whole structure is the exit trough. That whole structure both cooperates to hold the cables and relieve the strain as they exit the channel. As demonstrated on page 48 of our principal brief in the 1442 appeal, the tenuous strain reliever, 54, has the same relative length and width proportions as all of the embodiments in ADC's patents. Okay, would we have to conclude that your argument with respect to the upstanding sides on the upper portion is correct before we can consider this to be an exit trough? No. In all of ADC's claims, the upstanding sides are separately recited as an additional element of the cable exit trough. So to the extent that claims that recite the cable exit trough don't recite the upstanding sides, the trough doesn't need to have the sides. Just to find that particular element, of course, for the claims that recite the upstanding sides, then we have to interpret it to have the upstanding sides. Can we go back to Long for a second? I have trouble with Long and seeing how it's not completely enclosed. You're arguing that it meets the open requirement, right? And looking at Figure 2 of Long, I guess I don't quite comprehend where you find that it's open. Well, you can see this structure, Element 5 in Figure 2. The cables are laying in the trough below that structure. You can see them in cross-section there at the surface. Those cables have to turn up and into the bottom of the funnel-shaped Part 5 and then curve over the top of the rounded Guiding Element 6. The board found that the Part 5 was a tube. So it clearly has an opening in the bottom of the top, even according to the board. But the cables turn up into the bottom and then out of the top. So it's open on the bottom and the top. It's the only way the cables can travel through it. So, returning to Zittenia, Zittenia's strain reliever is the Long-Narrow Open Receptacle, consistent with the board's Overland Narrow construction. I'd like to turn to the proposed obviousness projections over Zittenia in view of Schuerman and Long. The board incorrectly determined that it would not have been obvious to replace Zittenia's slots and grommets with Schuerman's curved sidewalls. In the appeal, the board expressly found two things. Zittenia's Cable Holder 56 and Grommet 58 lack adequate cable protection. The board also... So you didn't present any expert declaration about the obviousness issue, right? No, we did not. We did not. The board also found, however, that Schuerman's curved sidewalls provide adequate cable protection without the need for accommodating individual cables with individual grommets and individual slots. These findings alone are reason enough for a skilled artisan to have found the modification obvious. No more is needed. The board found that it wasn't obvious by focusing narrowly on the specific functions of different elements. The board found that it believed there was not obviousness since the function of Zittenia's Cable Holder was to firmly hold the cables. And that function was different from the function of Schuerman's Cable Guide Part. But for obviousness, there's no requirement that functions be identical when you're modifying a reference. And in fact, what you have to look at is the reference as a whole. And Zittenia's Strain Reliever 54, what we're really talking about, its function is to prevent strain in cables, to protect cables. Is that what you argued? Because I understood your argument in your briefs to be mainly not that they have it's okay to have different functions, but that the board erred when it said that the functions are different. It is okay to have different functions. But to the extent that the board or this court believes that the functions need to be the same, we're saying the functions are in fact the same. And the function is protecting cables. No, I'm just asking if you argued in your brief that that's wrong, that the functions don't need to be the same, that the functions can't be different in the board's mind? I recall that we did argue that. But based on the board's own finding, we feel like the board itself has established enough to prove obviousness in this case. By doing what? By finding that Zittenia lacked a particular thing that was desirable, which was adequate cable protection, and that Shurman's curved sidewalls provide adequate protection without the need for slots and grommets. Those were two factual findings by the board, and that's all that you need for obviousness. One reference had a problem that was recognized. The second reference solves that problem. That's enough to find that it would have been obvious. I'd like to reserve my remaining time for rebuttal if there's no more questions. Okay, that's fine. Mr. Kaspers? May it please the Court. On Panduit's appeals, I'll address two issues. First, the finding that Long's exit device is not a trough, and the second is the finding that Zittenia's strain reliever is not a trough. Can you first deal with the claim construction argument that your friend made, cable exit trough, and why the board did not err by construing it in a limited fashion to only limit it to open? Yes. Panduit argued that in our patent, because the trough defines a pathway, then the term trough should be construed to read on any structure that defines a pathway. But that's not reasonable because many structures define a pathway that are not troughs, sidewalks, stairs, even a log across a stream. That doesn't seem entirely responsive. The issue seems to be whether a tube-like structure is a trough within the broadest reasonable interpretation of these claims. And so, and we have in the past considered definitions and dictionaries and things like that that weren't raised below on appeal. So let's assume for the moment that we do consider the dictionary definition. What is wrong with the suggestion that this includes both open and closed pathways for cables? Okay. If you look at Panduit's definition, it's reading it to limit troughs to tubes. No, they're not. Well, they say, if you look at the definition itself, it says troughs are tubes. They're not... Let's assume that they're saying that both are, okay? That both open and closed. What's wrong with that definition? Well, one of the problems with it is that it's kind of, it's confusing. You see the two definitions side by side and they're mutually exclusive. And so, I find their definition somewhat strange and it may be that they're talking about open channels with removable lids on them. And had they brought... Is there anything in your written description that would tell us that your trough is defined as something with an open top? Yes. The only embodiment disclosed has an open top. And in the real world, when you're trying to insert... Well, that's not sufficient, though, to limit the claim to the disclosed embodiments, right? Right. But as well, our declarant, Rapp, says that what happens in the real world is oftentimes you put a cover, a removable lid on top. That you put the cables in, you put a removable lid on top. And their definition, it's kind of confusing. Had they brought it at the right time... So your expert says the definition should include a channel with a removable lid? It's... Yes or no? Yes. I mean, he says that it's an open trough. So you agree that an open trough with a removable lid would be within the claim? That's right, but not a fused, fully enclosed tube. So that's what we're talking about. That's what we're talking about. A fused lid and an unfused lid. That's right. So if you have a piece of equipment over here and a piece of equipment over here, and you connect up the fibers to see that they work, and now you want to put them in the trough, you'd grab the intermediate portion and put it in the trough. You don't have to get access to the ends. Whereas if it was a tube, you'd need to get access to the ends and thread them through the trough. Because it's... Thread them through. If it was a tube, you'd have to thread them through. If it was a top, a trough with an open side, you could just lay them in there. Then, of course, you could put a removable cover on top. Can I just go back to Judge O'Malley's question and Judge Dykes, I guess? Aside from the fact that the preferred embodiment is open, is there anything else you can point to in the written description that tells us that enclosed... Well, the definition that the board took, which it's an open receptacle, a long, open, narrow receptacle channel or gutter. Their definition is actually narrower than the one you're saying is the correct one. Because it doesn't allow a removable lid. It can have. That's an option. Oftentimes, you put a removable lid. Not always, but oftentimes. That's why I think their definition is a little confusing. Had they brought it before the board's decision on this, we could have vetted that definition. And that's why the examiner and the board excluded it. Because... Well, coming back to Judge Prost's question and Judge O'Malley's question and my question. What is there in the specification that tells us that it doesn't include a tube? There's the preferred embodiment. And I understand... Anything else? No, I'm not aware of anything else. There may be a related patent that we referenced in some of our... I think it's a 678 that talks about... Oftentimes, these open channels will be provided with a removable lid. Not a... In other words, it wouldn't be a fused tube. And then you have wrap as well as extrinsic evidence. So, again, I get back to... We don't know that their definition actually... It's confusing as to what it says. So, an enclosed channel. Well, a channel, the commonly understood characteristic and structure of a channel is a three-sided structure or a... As the board says. Yeah, but they have the advantage of having the rule that we apply, which is the broadest reasonable interpretation. So, they're less constrained, right? I mean, you know, they've got this definition, they've got the other definition, and they're just saying that the board erred by not applying the broadest reasonable construction under those circumstances when you combine all of that. Why is that wrong? I don't think it's reasonable because had they brought that at the right time, we could have come in with expert testimony saying, no, that's not what that's talking about. Your view of that definition is it must be a tube, Panduit. Our view is it's an open channel, perhaps with a removable lid. And we could have vetted that out at the proper time, and we would have come in with our experts, and they would have come in with whatever they had. Why does it have to be an open channel? I mean, what's your expert going to rely upon? Not just, I read this definition differently than you. What is the expert going to rely upon as it relates to the working of this invention? The common dictionary definition, which says the characteristic structure and shape of a trough is understood. The common dictionary definition? That doesn't seem like a very useful expert affidavit. But it's consistent with what the spec discloses. As well, they would have come in and said, now, enclosed has to be referring to these removable lids that can be placed on top. And why would they say that? They would say that because in the context of cable routing systems, that's what you would do. You would not be threading fibers through tubes. I mean, if it was a 100-foot tube, you'd have to fish it through this end all the way through the other end. In this context, that doesn't happen. It would certainly be easier the shorter it gets, but you still have to get access to the ends. And if those ends are connected to equipment, you'd have to disconnect those. Is there anything with respect to how the exit trough operates in relation to the lateral trough that would tell us that it would have to be open, that the lateral would have to be open? Well, as well, what happens is that when you're routing cables through there, if it's connected to equipment, you'd have to find the ends. You'd have to disconnect it and then thread it through. And it presents additional risk to the cables. Is it not the case that when fiber optic cable is laid under the street that it goes through tubes? I don't know that, Your Honor. I don't know that. It's possible that it could well be. But we're talking about troughing systems for central data centers. So, again, we would have cut... Is it possible to thread a fiber optic cable through a tube? It's not physically impossible, but I believe even their definition, it is unclear whether... It recites the word channel, which is open. Why would... If a channel is a trough, why would they have to say enclosed? It even suggests that you're having a removable lid. And that's what our expert would have said, and we would have vetted it out at the appropriate time. That's why the examiner and the board rejected it. It was inconsistent with their definition. A tube versus an open channel, the mutually exclusive definitions, the more reasonable one was the board's, and they brought theirs late, and it was practically excluded because we could have vetted it out. The time to vet the evidence is before the decision, not after the decision. Okay, so what about the upper portion? The upper portion, upper surface, in the context of the 103 rejection regarding Zataina, Long, and Staver, Schuerman, I'm sorry, Staver, Zataina, Long, and Schuerman, the board found that Long did not have the upper surface. And what PEN relied on in its early briefing were these drawings that were pulled together by attorneys without any expert testimony that it's an upper surface. And their drawings are inconsistent with what Long shows, and that's why it was rejected. So, let me turn to ADC's appeal on the 854 patent. I will address two issues. First is the construction of lateral trough, and second, the construction of mountable without cutting. And I've chosen these two issues because either one is dispositive of all the rejections of Claims 1 and 36 of the 854 patent. And regarding lateral trough, the board found that the term lateral does not restrict the direction in which the trough must run. And therefore, a lateral trough reads on a trough that runs vertically, horizontally, or in other directions. And you're saying it's just horizontal? That's correct. And so, if you practice it vertically, there'd be no infringement? That's right. Doesn't that seem odd to you, that you could just move it around and avoid infringement? It doesn't, because the board's construction effectively removes that term. And if you look to the real world reasons that Rapp talks about for why those skilled in the art distinguish lateral troughs from vertical troughs. It's not that we're ignoring the term. I thought their definition was the plain meaning is extending from side to side. Right? They don't ignore the term lateral. They just define it in a way different than you do. Right? But by saying that it doesn't restrict the direction in which it runs, that effectively removes lateral from the claim. And if there's... If lateral doesn't restrict the direction it must run, then lateral trough reads on trough. And this also ignores the guidance provided by the inventors in the specification, which they said that the lateral trough... In the lateral trough, the cable extends horizontal to the ground, which reinforces that lateral has meaning. It can't just extend in any direction. And that lateral means horizontal or parallel to the ground. The claims as well, if you look at the claims, they reinforce that lateral means horizontal. They recite a lateral trough with an upstanding sidewall. Not just a sidewall. So what if it's a 90 degree angle? 90 degree angle. Well, a 90 degree angle would include two sections... So it's not lateral. But it's parallel to the ground, therefore it'd be lateral. I don't understand. Well, both sections... I'm saying if it's at 90 degrees to the ground. Oh, I'm sorry. 90 degrees. That would be vertical. That wouldn't be lateral. That would not be lateral. That's correct. I misunderstood. That wouldn't be lateral. It has to be exactly horizontal. Well, generally, I think the claims, the specifications are generally parallel to the ground. But you're correct. If you're at 90, it's not. If you're at 45, it's not. It's lateral. And that's the context in which the inventors were addressing. Creating a transitioning device for going out of the lateral trough. And so, you know, Rath goes into great detail talking about the real world considerations why those skilled in the art distinguish lateral troughs and vertical troughs. And keep in mind that whatever interpretation is taken, it cannot be reasonable if it's inconsistent with the specification as that specification would be interpreted by one of skilled in the art. And here, the only person of skilled in the art to testify here is Rath. And you keep failing to point us to the places in the written description. I mean, you know, in this one, you don't even have the words right. The written description says generally horizontal, not generally parallel. Correct? That was my mistake, yes. So why don't you point to the places in the written description that you think support this conclusion. Well, at first is the guidance that the inventors gave where they said that in the lateral troughs, the cables extend generally horizontal to the ground and that reinforces that lateral has meaning and it's generally horizontal to the ground. And then to the claims, there's other orientation language in the claims and I mentioned the one that it calls out an upstanding sidewall. The lateral trough has an upstanding sidewall, not just a sidewall. It also says that the cables are routed upwardly from the lateral trough, not just around the lateral trough. As well, the cable exit pathway extends over the top edge, not just around the edge. So, these only make sense if lateral means generally horizontal or parallel to the ground. And it's consistent with all the testimony that Rapp gives when he explains in the real world, there's a significant distinction between a lateral trough and a vertical trough. And so, if lateral is construed to mean generally horizontal, this would dispose of the 103 issue of Claims 136. The 103 issue relied on Staber as disclosing a lateral trough. And here, as to Staber, the board found that it discloses a vertically running trough along the side of an equipment rack. And the sideways protruding flange, not upstanding of a lateral trough, but a sideways protruding flange of a vertical trough forms the sidewall of that vertical trough. If lateral means generally horizontal, then a vertical trough can't be a lateral trough. And a sideways protruding flange cannot be an upstanding sidewall of a lateral trough. And to be clear, this is a significant difference. I mean, we have real world testimony from one skill in the art that goes into great detail. And at paragraphs 5 through 14 of his declaration, he explains in detail the real world considerations for why those skilled in the art distinguish lateral troughs from vertical troughs. Well, I didn't see him come right out and say that lateral in the art means horizontal. He kind of assumes that, but he doesn't really tell us that that's the way it's construed in the art, or give any basis for that conclusion. He's addressing the term lateral in the context of this invention. And in paragraph 5, he says lateral troughs, he refers to lateral troughs as troughs that run horizontal or parallel to the ground. Yeah, but he doesn't tell us that that's the way it's construed in the art, right? I think he does, because he uses... Well, where does he do that? He uses lateral trough interchangeably with horizontal trough. That's true, he uses it interchangeably, but that is not the same thing as an expert providing a declaration saying, I know what lateral means in this art, and here is my evidence that that's what it means. He just assumes it, right? I don't believe I agree with that. I think when he says he characterizes a lateral trough as one that runs horizontal or parallel to the ground, and then he moves on to talk about the significant distinctions between lateral troughs and vertical troughs, I think he's pointing out... But where does he say that that's the way it would be understood in the art? Did he say that? I don't know if he uses those exact terms, Your Honor. He may not. But he does go on in detail and talk about the distinction between lateral troughs and vertical troughs. And as well, he says in paragraph 14 that the person designing the exit trough for transitioning cables out of lateral troughs would not simply take ideas from structures used in vertical troughs. And he says, quote, the two environments present different complications that require different design approaches. And he goes on to explain that what the inventors did in this context was counterintuitive. And he states in paragraph 15 that, quote, despite the reasons that would have suggested that the invention of the express exit troughs would have been desired by customers, the exact opposite is true. And he continues with saying that the ADC express exit troughs have become critical to successful marketing of the ADC routing system. Okay. I think we're out of time here. For the moment, we'll give you a minute for rebuttal. Okay. Thank you. I'd like to first address a few issues with respect to the claim construction of lateral, sorry, cable exit troughs. Number one, our submission of this definition was not late. We submitted our definition demonstrating the breadth of the term as soon as we possibly could. On reexamination, the examiner was of the mind that all of the references disclosed a cable exit trough. So whether that was in the art or not was not in question. When the board issued their decision on appeal, they construed cable exit troughs on their own and found it lacking in the references. We attempted to... That was not argued to them? That was not argued to them. We attempted to insert the definition when prosecution was reopened. We were denied that opportunity. This is the first opportunity we've had to address the board's construction. Regarding the Rapp declaration, you know, what Rapp says in his declaration is basically he's talking about the commercial environment of their invention and why it's great and why they came up with it. It doesn't say anything about how terms would be broadly construed under the broadest reasonable interpretation standard and it doesn't say anything about devices falling within the breadth of their claim. It focuses strictly on the advantages of the commercial environment. Returning... Talking about the lateral trough section construction, lateral means of or pertaining to the side. It doesn't have to be horizontal and as Judge Post pointed out, it's really unworkable particularly for the claims directly to just the cable exit trough to require it to be horizontal to be horizontally oriented. Well, but the question is not whether in some sense you might want to use it a different way but whether the written description actually contemplates that it be horizontal and it actually says that it's generally horizontal to the ground. It uses that language and then it says  is a vertical exit trough and then it says that the trough is designed to hang from the ceiling. So, you know, it doesn't have to be horizontal and then why isn't it whether it's a good invention or not, why isn't it fair to say that what they describe is actually a horizontal invention? All of those descriptions apply to the preferred embodiment. They're not broad statements about the invention in general. It's a description of the preferred embodiment and furthermore, their specification does say that their cable exit trough can be used with other troughs other than the one described and so, within the full bounds of the specification, nothing says it has to be horizontal and particularly for the claims that are just to the cable exit trough and does that mean that if you arrange them on the shelf vertically in the store, they don't infringe but the ones that are sitting on their side are infringing products? It's an unworkable construction. Over pertaining to the side means that it has something to do with the side. In Staber, the flange runs down the side of the cabinet. It's a lateral flange and the bridge gets you over that lateral flange. It's lateral because it's on the side of the cabinet. It's a much broader term than ABC would have you believe. Okay. Thank you, Mr. Collier. I think we're out of time here. Mr. Caspers, you have one minute. Regarding the appeal, we did argue that Long did not have a trough and that issue came up and we addressed it with respect to their drawings. Regarding the Rule 36 issue, that Long does not disclose a trough, that was the only ground for the Board's decision down below. It was affirmed, summarily affirmed. There may have been factual issues that were discussed, but if there were factual issues that were disagreed with, you would think that it would have been remanded if there was a disagreement with it. Regarding, if I may, the mounting without cutting, what happened here I wasn't discussing before, I'm sorry. There was a comment made about there was no ruling by the Board that it restricts the directions, but the Board said, quote, the term lateral, quote, does not restrict the direction in which the trough must run, and therefore a lateral trough could read on a trough that runs horizontally, vertically, or in other directions. Okay, Mr. Kessler, I think we're out of time. Okay, thank you. Thank you all